IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02672-CMA-KLM

SUZANNE CONRY, an individual,

     Plaintiff,

v.

EUGENE H. BARKER, an individual,
BERNARD C. MAYNES, an individual,
B&B 2ND MORTGAGE, LLC, a Colorado limited liability company,
B&B VENTURES, LLC, a Colorado limited liability company,
HIGH POINTE, LLC, a Colorado limited liability company,
TERRY D. HAMILTON, an individual,
CHEM-AWAY, INC., a Colorado corporation,
SHARON M. HAMILTON, an individual, and
CHEM-AWAY, INC., a California corporation,

     Defendants, and

TERRY D. HAMILTON, an individual,

     Third-Party Plaintiff,

v.

THOMAS W. METCALF, an individual,
THOMAS W. METCALF, ATTORNEY AT LAW, a professional law firm,
ROBERT E. RAY, an individual,
LAW OFFICE OF ROBERT E. RAY, a professional law firm,

     Third-Party Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants Eugene H. Barker ("Barker"), Bernard

C. Maynes ("Maynes"), B&B 2nd Mortgage, LLC, B&B Ventures, LLC, and High Point,

LLC's (collectively, the "Barker Defendants") **Motion to Dismiss** [#7][1] (the "First Barker Motion").  Plaintiff, who is proceeding pro se,[2] filed a Response [#11] in opposition to the First Barker Motion [#7], the Barker Defendants filed a Reply [#13], and Plaintiff filed a Surreply [#15].  *See Minute Order* [#19] at 1.

This matter is also before the Court on the Barker Defendants' **Motion to Dismiss Cross-Claim of Terry D. Hamilton** [#37] (the "Second Barker Motion").  Defendant T. Hamilton,[3] also proceeding pro se, filed a Response [#53] in opposition to the Second Barker Motion [#37].  No reply was filed.

This matter is also before the Court on Third-Party Defendant Robert E. Ray's ("Ray") **Motion to Dismiss Third Party Claim of Terry D. Hamilton** [#38] (the "Ray Motion").  Defendant T. Hamilton filed a Response [#54] in opposition to the Ray Motion [#38].  No reply was filed.

This matter is also before the Court on Third-Party Defendant Thomas W. Metcalf's ("Metcalf") **Motion to Dismiss Third Party Claim of Terry D. Hamilton** [#52] (the "Metcalf Motion").  Defendant T. Hamilton filed a Response [#68] in opposition to the Metcalf Motion

---

[1]  "[#7]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Recommendation.

[2]  The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3]  Terry D. Hamilton is a Defendant, Cross-Claimant, and Third-Party Plaintiff in this matter. However, the Court refers to him as "Defendant T. Hamilton" throughout, regardless of his role in the particular issue addressed.

[#52], and Third-Party Defendant Metcalf filed a Reply [#73].

The Motions have been referred to this Court for recommendation [#12, #40, #55] pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c)(3).  The Court has reviewed the Motions, the Response, the Replies, the case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motions [#7, #37, #38, #52] be **GRANTED.**

## I.  Background

### A.    Plaintiff's Complaint

At the outset, the Court notes that Plaintiff includes very little factual background about the events underlying the Complaint.  Her claims involve a settlement agreement, but she provides no detail about the seemingly complicated procedural history leading to that agreement.  The following factual allegations comprise the entirety of the background set forth in the Complaint.

Plaintiff is a citizen of Florida.  *Compl.* [#1] ¶ 1.  The Barker Defendants are Colorado citizens and Colorado corporations for which Defendants Barker and Maynes are the principals.  *Id.* ¶¶ 2-6, 15.  Defendant T. Hamilton and his wife, Sharon M. Hamilton ("S. Hamilton"), are California citizens and principals of Defendants Chem-Away of Colorado and Chem-Away of California (collectively the "Hamilton Defendants.")  *Id.* ¶¶ 7-10, 16.

Plaintiff alleges that she and the Barker Defendants agreed to a Settlement and Release Agreement (the "SRA") on December 11, 2013.  *Id.* ¶¶ 21-22; *see generally Compl., Ex. 1* (the "SRA") [#1-1].  The SRA purports to settle claims between Plaintiff, the Barker Defendants, and another entity called "PDC" regarding property interests, mineral

interests, and mineral royalties related to land situated in Weld County, Colorado. *SRA* [#1-1] at 1-2. Plaintiff alleges that by negotiating the SRA, she and the Barker Defendants "agreed to abandon the former and disputed March 2010 purported global settlement agreement."[4] *Compl.* [#1] ¶ 23. She further alleges that the Barker Defendants did not inform the state courts about the SRA, and that she would not have entered the agreement if she had known that the Barker Defendants did not intend to inform the courts about the "abandonment of the March 2010 Global Agreement and subsequent March 3, 2011 state court interlocutory order and purported judgment."[5] *Id.* ¶¶ 24-25.

On May 29, 2014, Plaintiff became aware of a Colorado Court of Appeals opinion.[6] *Id.* ¶ 26. She alleges that this opinion was a result of the Barker Defendants "committing intentional fraud against Plaintiff." *Id.* She further alleges that this opinion could result in the loss of her ability to pursue damages against the Hamilton Defendants related to a promissory note and deed of trust (collectively, the "Note and DOT") tied to parcels of land labeled "A-E." *Id.*

As a result of these allegations, Plaintiff broadly asserts four claims with accompanying requests for relief. In her first claim, Plaintiff asserts that the Barker Defendants have breached the SRA.[7] *Id.* ¶ 30. Plaintiff's second claim requests a

---

[4] The Complaint [#1] does not provide any further details surrounding the context or contents of this global settlement agreement. The SRA similarly makes no mention of such an agreement.

[5] The Complaint [#1] does not further specify the content or relevance of the "March 3, 2011 state court interlocutory order."

[6] Plaintiff does not specify what opinion she became aware of.

[7] Plaintiff also asserts that she "was bifurcated out of the trial [in state case 2010CV15]" which led to an unspecified "violation of Plaintiff's civil and constitutional rights." *Compl.* [#1] ¶ 31.

declaration that the Barker Defendants are in breach of the SRA.[8]  *Id.* ¶ 33.  Plaintiff's third

claim, styled a "Collateral Attack Against Prior State Court Judgments," requests a

declaration[9] that Colorado state court cases 2001CV473, 2005CV1774, and 2009CV625[10]

"never ended, continued on[,] and were partially settled in subsequent [c]ase 2012CV15."[11]

*Id.* ¶ 36.  Plaintiff's fourth claim asserts that the Hamilton Defendants "breached contract(s)"

by "failing to honor the assignment of the $960,000 Note and DOT."  *Id.* ¶ 39.  The fourth

claim also requests compensation for "ownership interests in subject matter Tracts A-E."

*Id.*

Plaintiff additionally requests the following relief from all parties: actual damages,

exemplary damages, costs, attorneys' fees, prejudgment and postjudgment interest, and

other relief "including a stay on the funds being held for the [Hamilton Defendants] in

related case[s.]"  *Id.* ¶¶ A-G.

The First Barker Motion [#7] seeks dismissal of all claims against the Barker

Defendants for lack of subject matter jurisdiction pursuant to the *Younger* abstention

---

Plaintiff does not further elaborate on what rights she is asserting or how this incident relates to her breach of contract claim.

[8]  The Hamilton Defendants are also listed in the second claim, although it is unclear how they are implicated, since they were not parties to the SRA and were not listed in Plaintiff's first claim.  *See generally SRA* [#1-1].

[9]  Plaintiff also requests monetary damages pursuant to this claim, although it is unclear what legal theory would support such relief pursuant to the Declaratory Judgment Act (styled by Plaintiff as "pursuant to Fed. R. Civ. Proc. 57."  *See* 28 U.S.C. § 2201.

[10]  Plaintiff includes no information about these cases other than their docket numbers.

[11]  Also under the heading of her third claim, Plaintiff states that her "real property surface estate and mineral estate . . . are protected pursuant to [the Seventh and Fourteenth Amendments]."  *Compl.* [#1] ¶ 37.  It is unclear if she is alleging that her constitutional rights were violated and, if so, how they were violated.

doctrine and Fed. R. Civ. P. 12(b)(1).[12] [#7] at 6.  In the alternative, the First Barker Motion [#7] asserts that Plaintiff's claims should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *Id.* at 1.

## B.   Defendant T. Hamilton's Complaint

Also at issue in the Motions are cross-claims and third-party claims brought by T. Hamilton in his Cross-Complaint/Third-Party Complaint (the "Hamilton Complaint")[13] [#23].

Defendant T. Hamilton alleges that on April 10, 2000, he entered into a contract with the Barker Defendants in which he sold them "Parcels 1, 2[,] and 3 excluding Tracts A-E" (the "Property").  *Hamilton Compl.* [#23] ¶ 16.  The purchase price was $2,760,000, comprised of $1,500,000 in cash proceeds from a loan from Centennial Bank, $960,000 in the form of a Note and DOT which were subsequently assigned to Plaintiff, and $300,000 at closing.  *Id.* ¶ 17.  Defendant T. Hamilton alleges that the Barker Defendants breached the sale contract by failing to pay $1,460,000, comprised of the following: $960,000 as evidenced by the Note and DOT assigned to Plaintiff; $300,000 in cash due at signing; and

---

[12] *Younger* abstention is an issue of subject matter jurisdiction, which is governed by Fed. R. Civ. P. 12(b)(1).  *See Marshall v. Dupree*, No. 08-cv-00561-LTB-KLM, 2008 WL 2751343, at *4 (D. Colo. July 11, 2008) ("Pursuant to the *Younger* abstention doctrine, federal courts must abstain from exercising subject matter jurisdiction so as not to 'interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court.") (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)).  Accordingly, despite the fact that the First Barker Motion [#7] only mentions Fed. R. Civ. P. 12(b)(6) as grounds for dismissal, the invocation of *Younger* abstention necessarily implicates Fed. R. Civ. P. 12(b)(1) as well.

[13] The Hamilton Complaint spans 30 pages and contains 140 pages of supporting exhibits, most of which comprise a series of wholly irrelevant documents from previous state court cases and documents from real estate transactions.  Nothing about the document is "short" or "plain" as required by Fed. R. Civ. P. 8(a).  However, the Court has attempted a construction of the Hamilton Complaint despite the lack of context, structure, or dates provided.

$200,000 withheld from the sale proceeds. *Id.* ¶ 20.

Defendant T. Hamilton further alleges that Third-Party Defendant Metcalf was an escrow agent for Defendant B&B 2nd Mortgage, LLC, and himself, as well as counsel for the Barker Defendants.[14]  *Id.* ¶ 11.  He also alleges that Third-Party Defendant Ray "is counsel for [the Barker Defendants] and facilitator of [the] SRA between [the Barker Defendants] and Plaintiff." *Id.* ¶ 12.

Defendant T. Hamilton alleges that, at unspecified times, the Barker Defendants and Third-Party Defendant Metcalf "committed mortgage fraud upon the Bank and [T.] Hamilton, insurance fraud upon the title company, fraud upon the public trustee of Weld and Larimer Count[ies] and fraud upon the [c]ourt." *Id.* ¶ 22.  Defendant T. Hamilton further alleges that the Barker Defendants and Third-Party Defendants Ray and Metcalf (collectively the "Cross-claim Defendants") filed false affidavits, lied to an unspecified court in oral arguments, and filed false documents.[15]  *Id.* ¶ 53.  He alleges that these same Defendants "orchestrat[ed] a scheme" that appears to involve the falsification of various documents causing the issuance of a title insurance policy, then later stating that the documents used to secure this policy were "null and void." *Id.* ¶¶ 60-61.  Similarly, he alleges that the Cross-claim Defendants misrepresented the nature of the transactions in the property sale, resulting in the diversion of the same $1,460,000 he asserts that the Barker Defendants failed to pay him.  *Id.* at ¶¶ 66-69.  He additionally alleges that the

---

[14]  The Hamilton Complaint [#23] does not specify when Third-Party Defendant Metcalf began representing the Barker Defendants or when he ceased representing them.

[15]  Defendant T. Hamilton does not specify when any of these offenses allegedly occurred, nor which court was targeted.

Barker Defendants and Third-Party Defendant Metcalf misused a set of "escrow instructions" to deprive him of the $960,000 promissory note.  *Id.* ¶ 23.

Finally, Defendant T. Hamilton alleges that Third-Party Defendants Ray and Metcalf misled and "wrongfully influenced the court" by their "failure to be candid regarding the true effects and purpose of the SRA."  *Id.* ¶ 24.

As a result of these allegations, Defendant T. Hamilton asserts twelve claims. Defendant T. Hamilton's first claim, titled "Declaratory Judgment pursuant to Fed. R. Civ. Proc. 57," contains no theory of recovery and simply realleges the previous paragraphs. *See id.* [#23] ¶¶ 26, 27.  It appears that Defendant T. Hamilton has mistaken declaratory judgment for a cause of action.  *See Fitts v. Fed. Nat'l Mortg. Ass'n*, 44 F. Supp. 2d 317, 330 (D.D.C. 1999) ("A request for declaratory judgment constitutes a form of relief, not a cause of action.") (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 92 (6th Cir. 1997)).  Thus, the Court liberally construes the first claim as a request for declaratory relief sought as a result of his other claims.  Specifically, he mentions that he "will seek declaratory judgment . . . regarding": (1) whether the SRA between Plaintiff and the Barker Defendants is a binding contract; (2) whether the Barker Defendants "interfered with the business relationship between [T.] Hamilton and Plaintiff"; (3) whether the April 10, 2000 real estate transaction was "a sale of the Property from [T.] Hamilton (Buyer) to B&B 2nd Mortgage, LLC (Buyer) for $2,760,000 with [T.] Hamilton's assignment of $960,000 seller carry-back promissory Note to Plaintiff" and/or a "purchase money loan from B&B 2nd Mortgage (Lender) to [T.] Hamilton (Borrower) for $1,500,000 with Hamilton's assignment of $960,000 [the PN and DOT] to Plaintiff."  *Id.* ¶¶ 4.

Defendant T. Hamilton's second, third, ninth, eleventh, and twelfth claims against

the Cross-claim Defendants relate to the sale of his property and assert the following: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraudulent conveyance of a quitclaim deed, (4) civil theft,[16] and (5) unjust enrichment. *Id.* ¶¶ 30, 35, 72, 78-80, 86-88.

Defendant T. Hamilton's fourth claim asserts that the Cross-claim Defendants committed outrageous conduct. *Id.* ¶¶ 38-51.

Defendant T. Hamilton's fifth, seventh,[17] eighth,[18] and tenth[19] claims assert that the Defendants committed fraud. *Id.* ¶¶ 53, 62, 65.

Defendant T. Hamilton's sixth claim alleges that the Cross-claim Defendants have committed fraud upon the courts. *Id.* ¶ 56.

---

[16]   Defendant T. Hamilton's eleventh claim is titled "Grand Larceny/Theft."  The Court liberally construes it as a claim for civil theft pursuant to Colo. Rev. Stat.§ 18-4-405.

[17]   The seventh claim is titled "Insurance Fraud."  Insurance fraud is a crime, not a civil cause of action. *See* Colo. Rev. Stat. § 18-5-211 (defining the crime of insurance fraud).  Thus, the Court liberally construes this claim as another claim of common law fraud.

[18]   The specific meaning of "mortgage fraud" intended by Defendant T. Hamilton is unclear.  Defendant T. Hamilton repeatedly references the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") in his eighth claim, although FIRREA does not create a private cause of action. *See* 12 U.S.C. § 1833a(e) ("A civil action to recover a civil penalty under [FIRREA] shall be commenced by the Attorney General.").  Similarly, bank fraud is a crime, not a civil cause of action. *See* 18 U.S.C. § 1344 (defining the crime of bank fraud).  Therefore, the Court construes this claim as another claim of common law fraud.

[19]   Defendant T. Hamilton additionally asserts, as his tenth claim, that Third-Party Defendant Metcalf exerted undue influence over him.  The only causes of action potentially applicable pursuant to the doctrine of undue influence would be recision of a transfer or voidance of a contract. *See* Restatement (Third) of Restitution and Unjust Enrichment § 15(1) ("A transfer induced by undue influence is *subject to rescission* at the instance of the transferor or a successor in interest") (emphasis added); Restatement (Second) of Contracts § 177(2) ("If a party's manifestation of assent is induced by undue influence by the other party, *the contract is voidable* by the victim") (emphasis added).  Because Defendant T. Hamilton seeks damages, and does not appear to desire to void a contract or rescind a transfer, the Court construes this claim as another claim for common law fraud.

In relief, Defendant T. Hamilton requests actual damages, compensatory damages, punitive damages, interest, attorneys' fees, and costs.  *Id.* ¶¶ R26, R27, R31, R32, R33.[20]

The Barker Defendants and Third-Party Defendants Ray and Metcalf seek dismissal of all claims on the basis of *Younger* abstention or, in the alternative, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *See Second Barker Motion* [#37] at 2, 7; *Ray Motion* [#38] at 2, 6; *Metcalf Motion* [#52] at 2, 6-7.

## II.  Standard of Review

### A.    Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.  *Id.*  By contrast, when reviewing a factual attack on a complaint, the Court "may not

---

[20]  The Hamilton Complaint restarts its paragraph numbering on page 26.  Since each paragraph thereafter comprises a request for relief, the Court refers to these paragraphs by the convention "¶ R" followed by the paragraph number for clarity.

presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## B.      Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*,

510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

#### A.    Plaintiff's Claims

The Barker Defendants argue that *Younger* abstention should apply to Plaintiff's claims, and that, even if the Court does not abstain, Plaintiff has failed to state a claim. *First Barker Motion* [#7] at 2.

##### 1.     *Younger* Doctrine

The Barker Defendants and Third Party Defendants Ray and Metcalf argue that the *Younger* doctrine precludes this Court from exercising subject matter jurisdiction over Plaintiff's and Defendant T. Hamilton's claims. *First Barker Motion* [#7] at 6; *Second Barker Motion* [#37] at 7; *Ray Motion* [#38] at 6; *Metcalf Motion* [#52] at 6-7. Accordingly, the Court first considers whether it has subject matter jurisdiction over Plaintiff's and Defendant T. Hamilton's claims. *See Herrera v. Alliant Specialty Ins. Servs., Inc.*, No. 11-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion to dismiss"); *Lightstone Grp., LLC v. C.W. Horton Gen. Contractor*, No. 10-cv-03096-PAB, 2010 WL 5387758, at *1 (D. Colo. Dec. 22, 2010) ("Absent an assurance that jurisdiction exists, a court may not proceed in a case.").

"Under the *Younger* abstention doctrine, federal courts should not 'interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – 'when a state forum provides an adequate avenue for relief.'" *Weitzel v. Div. of Occupational & Prof'l Licensing of the Dep't of Commerce of the State of Utah*, 240 F.3d 871, 875 (10th Cir. 2001) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)). "*Younger* abstention is non-discretionary; the district court must abstain once the conditions are met, absent extraordinary circumstances." *Id.* (internal quotations omitted). The Court of Appeals for the Tenth Circuit has stated the conditions for abstention as follows:

> A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding; (2) the state court provides an adequate forum to hear the claims raised in the federal

complaint; and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

*Amanatullah v. State Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).

However, the Supreme Court's recent ruling in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), reversed an Eighth Circuit decision applying substantially the same factors as *Amanatullah*, holding that the use of the "important state interests" factor improperly broadened the scope of *Younger* abstention.   *See MacIntyre v. JP Morgan Chase Bank*, No. 12-cv-2586-WJM-MEH,  2015 WL 1311241, at *2 (D. Colo. Mar. 19, 2015) (holding that *Sprint* "significantly cabined the breadth of *Younger* abstention as it has been applied in this circuit").   The Supreme Court clarified that *Younger* abstention extends only to three "exceptional circumstances": (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint*, 134 S. Ct. at 591.

The Barker Defendants address *Sprint*, stating that this matter falls under the third "exceptional circumstance," which they misstate as "pending state civil court proceedings." *See First Barker Motion* [#7] at 8.   The verbatim standard, "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions," cites prior decisions in *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977) (ruling that *Younger* should have been applied in light of state court contempt proceedings), and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) (ruling that *Younger* should have been applied to an action challenging the procedure used to obtain a state court judgment).

-14-

Here, it is unclear that the underlying proceedings involve any order "uniquely in furtherance of the state courts' ability to perform their judicial functions." *See MacIntyre*, 2015 WL 1311241, at \*2-3 (holding that *Younger* was inapplicable to a Rule 59(e) challenge to a foreclosure proceeding after *Sprint*).

In light of the apparent narrowing of *Younger* abstention, the Court finds it mostly inapplicable in this case.  However, the Court agrees with the reasoning in *Tucker v. Specialized Loan Servicing, LLC*, No. PWG-14-813, 2015 WL 452285, at \*6-7 (D. Md. Feb. 3, 2015), where the court thoroughly analyzed the applicability of the third exception from *Sprint* to a case that "mirror[ed] contract litigation" and held that *Younger* abstention did not apply to claims for damages, but necessarily applied to a claim for declaratory relief which would interfere with an ongoing state court appeal.  Plaintiff's third claim requests a declaratory judgment holding that "cases 2001CV473, 2005CV1774, and 2009CV625 never ended, continued on[,] and were partially settled in subsequent [c]ase 2012CV15." Defendants claim that Plaintiff is attempting to interfere with the judgment in *B&B 2nd Mortgage v. Hamilton*, 2012CA605 (Colo. App. May 29, 2014),[21] and the Court agrees. *First Barker Motion* [#7] at 4.  In essence, Plaintiff's third claim, titled "Collateral Attack Against Prior State Court Judgments," asks for a declaratory judgment that the Colorado Court of Appeals' judgment in 2012CA605 is invalid because that judgment affirmed the

---

[21] Plaintiff refers only to a Colorado Court of Appeals opinion entered on or about May 29, 2014. *Compl.* [#1] ¶ 26.  However, the Barker Defendants attached to their motion a copy of an opinion in case 2012CA605 issued on May 29, 2014 which involves the subject matter underlying Plaintiff's claims.  The Court may consider outside documents subject to judicial notice when considering a motion to dismiss, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Plaintiff does not address the Barker Defendants' assertion that this is the case to which she refers in her Complaint.  Because of the unlikelihood of the issuance of multiple Colorado Court of Appeals opinions involving Plaintiff's interests on or about that date, the Court assumes this is the opinion to which she refers.

existence of a global settlement agreement which resulted in the dismissal of claims in cases 2001CV473, 2005CV1774, and 2009CV625.  *See First Barker Motion, Ex. 1* [#7-1] at 3.  The parties have also informed the Court that this very judgment is being appealed to the Colorado Supreme Court.  *Reply to Response to Metcalf Motion* [#73] at 3.  The Court must abstain from exercising jurisdiction over claims for declaratory relief that would impair the "state courts' ability to perform their judicial functions" pursuant to *Younger* and *Sprint*.  *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971) (stating that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid").  Therefore, the Court finds that *Younger* abstention is warranted in regards to Plaintiff's third claim.  *See Tucker*, 2015 WL 452285, at *7 (holding that *Younger* abstention, as applied by *Sprint*, remains a bar to declaratory relief which is "tantamount to a request for an injunction of the state court proceedings").

Accordingly, the Court **recommends** that Plaintiff's third claim be **dismissed without prejudice**.[22]  *See D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004) (stating that "*Younger* abstention is jurisdictional"); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice." (citations omitted)).

---

[22]  The Hamilton Defendants are also named as parties to Plaintiff's third claim.  Although the Hamilton Defendants have not filed a motion to dismiss, the Court likewise does not have subject matter jurisdiction over this claim as it pertains to them.  The Court must address subject matter jurisdiction sua sponte to "satisfy itself of its power to adjudicate . . . at every state of the proceedings."  *Tafoya v. United States Dep't of Justice*, 748 F.2d 1389, 1390 (10th Cir. 1984).  Therefore, the recommendation includes dismissal of the claim to the extent it is also asserted against the four Hamilton Defendants.

The Court is satisfied at this point that it has subject matter jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1332(a). The parties are completely diverse, and the amount in controversy on Plaintiff's fourth claim alone is $960,000, far exceeding the $75,000 statutory minimum.

### 2.    Breach of Contract Claims (Claims One and Two)

Pursuant to Colorado law,[23] a party asserting a breach of contract claim must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) failure to perform the contract by defendant; and (4) damages to the plaintiff. *Galvin v. McCarthy*, No. 07-00855-PAB-BNB, 2009 WL 890717, at *6 (D. Colo. Mar. 31, 2009); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

The Court first notes that Plaintiff's first and second claims rely on the same breach of contract theory. *See Compl.* [#1] ¶¶ 30, 33. The only difference appears to be that her first claim requests no specific relief, whereas her second claim requests a declaratory judgment holding that the SRA has been breached. Because the claims do not assert different theories of recovery, the Court analyzes them together.

It is difficult to discern the specific grounds upon which Plaintiff means to assert her breach of contract claim. Plaintiff appears to assert that the Barker Defendants had a duty to inform the state courts of the abandonment of the "2010 Global Agreement" which they allegedly did not do. *Id.* ¶ 30. However, the SRA contains no mention of anything resembling a "2010 Global Settlement Agreement." Plaintiff also appears to allege that the

---

[23]   A federal court exercising diversity jurisdiction applies the laws of the forum state in analyzing the underlying claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).

Barker Defendants were supposed to "inform the state court" of the existence of the SRA. *Id.* Once again, the SRA contains no mention of such an obligation. Despite Plaintiff's conclusory assertion that these obligations existed, there are no facts alleged or statements present in the SRA which support that conclusion.

Elsewhere in the complaint Plaintiff cites two provisions of the SRA upon which she may be claiming she is entitled to relief. The SRA states that it does not affect Plaintiff's ability to pursue claims against Defendant T. Hamilton. *Id.* ¶ 22b; SRA [#1-1] at 8. Additionally, it states that "the Parties agree that the outcome of the Remaining Weld County Cases will have no effect whatsoever on this Agreement or the stipulated Judgment in [2012CV15]." *Id.* ¶ 22c. While the precise meaning of this phrase is uncertain, Plaintiff may be asserting that the judgment in *B&B 2nd Mortgage v. Hamilton*, 2012CA605 (Colo. App. May 29, 2014) has interfered with her right to collect "damages related to the loss of [the PN and DOT]" from the Hamilton Defendants pursuant to the SRA. Upon review of the Court of Appeals' opinion, it is unclear exactly how it affects Plaintiffs interests. The case seems to affirm the finding of a global settlement, which may be the "2010 Global Settlement" referenced in the Complaint, but Plaintiff has not alleged any sort of connection between this finding and her right to collect damages from Defendant T. Hamilton.

Additionally, Plaintiff has not alleged that she has performed any of the obligations imposed by the SRA even in a conclusory fashion. Pursuant to the SRA, Plaintiff was required to assign her interest in the Note and DOT, execute a quitclaim deed to "Tracts A-E," and release the Lis Pendens filed in previous cases. *SRA* [#1-1] at 7. In fact, Plaintiff's fourth claim asserts a breach of contract on the Note and requests compensation for Plaintiff's "ownership interests in . . . Tracts A-E." *Compl.* [#1] ¶ 39. This allegation

belies any inference that Plaintiff has performed her contractual obligations. Thus, Plaintiff has failed to allege that she has performed her obligations pursuant to the SRA.

Accordingly, the Court finds that Plaintiff has failed to state a claim for breach of contract against the Barker Defendants.[24] The Court therefore **recommends** that Plaintiff's first and second claims be **dismissed without prejudice** in regards to the Barker Defendants. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should not attach to a dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

## B. Defendant T. Hamilton's Claims

The Cross-claim Defendants assert that the Court should abstain from exercising jurisdiction over Defendant T. Hamilton's claims pursuant to *Younger*, that his claims are barred by the statute of limitations, and that he has failed to allege his fraud claims with the specificity required by Fed. R. Civ. P. 9(b). *See Second Barker Motion* [#37] at 7; *Ray Motion* [#38] at 8; *Metcalf Motion* [#52] at 8-9.

### 1. Subject Matter Jurisdiction

For the same reasons stated above, *Younger* is inapplicable to the majority of this suit, with the exception of Plaintiff's third claim. None of Defendant T. Hamilton's claims approach the contemplated type of interference with state judicial functions.

However, the Court recognizes a jurisdictional issue with Defendant T. Hamilton's

---

[24] The Hamilton Defendants are also listed as parties to Plaintiff's second claim. *See Compl.* [#1] ¶¶ 32-34. No motion to dismiss has been filed on behalf of those Defendants. Because Plaintiff does not proceed in forma pauperis, the Court may not dismiss this claim sua sponte, despite the seeming lack of connection between the Hamilton Defendants and the SRA. *See Hines v. United States*, 971 F.3d 506, 508 (10th Cir. 1992) (acknowledging a "general rule against sua sponte review of unraised defenses").

sixth claim, which asserts that the Cross-claim Defendants have committed "fraud upon the courts." *Hamilton Compl.* [#23] ¶ 56.

The Supreme Court, in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), *overruled on other grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976), held that federal courts have inherent equitable power to vacate judgments obtained by fraud on the court. *United States v. Baker*, 718 F. 3d 1204, 1206 (10th Cir. 2013). The Court in *Hazel-Atlas* described the fraud as "a deliberately planned and carefully executed scheme to defraud . . . the Circuit Court of Appeals." *Hazel-Atlas*, 322 U.S. at 245. The Tenth Circuit has described fraud on the court as follows:

> Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court. It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function – thus where the impartial functions of the court have been directly corrupted.

*Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) (citation omitted). There are no formal requirements such as a statute of limitations or a special form of pleading for fraud on the court because the Tenth Circuit prefers to address the substance of the claim. *United States v. Buck*, 281 F. 3d 1336, 1342 (10th Cir. 2002).

However, there are numerous issues regarding the propriety of Defendant T. Hamilton's claim of "fraud upon the courts." First, the doctrine of fraud on the court provides for an equitable remedy which "invoke[s] the inherent power of a court to set aside its judgment." *Buck*, 281 F.3d at 1341. Defendant T. Hamilton does not request relief from any of the underlying state judgments litigated between the parties, but instead requests punitive damages. *Hamilton Compl.* [#23] ¶ 57. Furthermore, fraud on the court is an

equitable remedy allowing a federal court to grant relief from a federal judgment, not a state judgment.  *See Andersen v. Roszkowski*, 681 F. Supp. 1284, 1291 (N.D. Ill. 1988) ("Federal courts have inherent subject-matter jurisdiction to review *federal judgments* obtained by fraud on the court.") (emphasis added); *LaMie v. Wright*, No. 1:12-cv-1299, 2014 WL 1686145, at *14 (W.D. Mich. Apr. 29, 2014) ("The federal courts will not entertain a collateral attack on a state judgment on the basis of 'fraud on the court' in an action for damages.").  Additionally, courts have reached different conclusions about whether or not a claim of fraud on the court can be brought in a court other than the one where the alleged fraudulent judgment was obtained.  *See Followel v. Mills*, 317 F. App'x 501, 505 (6th Cir. 2009) (holding that an action for fraud on the court should be brought in the court where the alleged fraud first took place); *Beaulieu v. Bank of America, N.A.*, No. 1:14-cv-00023-GZS, 2014 WL 4843809, at *10 n.5 (D. Me. Sept. 29, 2014) (holding that "fraud on the court is not available as an independent cause of action based on conduct that occurred before a different court") (citing *Bradbury v. GMAC Mortg., LLC*, 780 F. Supp. 2d 108, 112 (D. Me. 2011) ("Fraud on the court may be a ground for a perjury prosecution, for vacating a judgment, for lawyer discipline, or for sanctions under Me. R. Civ. P. 11, but it is not a ground for the recovery of damages by a party in a later lawsuit.")); *but see Martin v. Hodel*, 692 F. Supp. 637, 641 (D.W. Va. 1988) (recognizing "an independent action to set aside a judgment of another court" on the theory of fraud on the court) (citing *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349, 1356-57 (4th Cir. 1982)).

Defendant T. Hamilton has not provided a cogent statement regarding subject matter jurisdiction for his claim of fraud on the court.  He merely cites a choice of law provision in Plaintiff's SRA.  *Response to Ray Motion* [#54] at 3.  However, "federal courts

are courts of limited jurisdiction," *Montoya*, 296 F.3d at 955, *Younger* abstention is nondiscretionary, *Weitzel*, 240 F.3d at 875, and the applicability of forum selection and choice-of-law provisions is not jurisdictional. *Botman Int'l, B.V., v. Int'l Produce Imps., Inc.*, 205 F. App'x 937, 941 (3rd Cir. 2006) (stating that "the applicability of a forum selection or choice-of-law clause is not a jurisdictional issue"). The power to set aside judgments is clearly equitable, and cannot form the basis of a claim for damages. *See LaMie*, 2014 WL 1686145, at *14; *Beulieu*, 2014 WL 4843809, at *10 n.5. Therefore, the Court **recommends** that Defendant T. Hamilton's sixth claim be **dismissed without prejudice** for lack of subject matter jurisdiction. *See Brereton*, 434 F.3d at 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice." (citations omitted)).

### 2.  Statute of Limitations

The Cross-claim Defendants argue that the applicable Colorado statute of limitations bars the presentation of any of Defendant T. Hamilton's claims against them.[25] *See Metcalf Motion* [#52] at 2. Defendant T. Hamilton responds only with the argument that fraud on the court is not subject to any statute of limitations. *Response to Metcalf Motion* [#68] at 4.

Because Plaintiff and Defendant T. Hamilton invoke the parties' diversity of citizenship as the basis of the Court's subject matter jurisdiction in this case, the Court

---

[25]   The Court also notes that it is undisputed that the parties have been litigating substantially these same issues for about fourteen years. *See Metcalf Motion* [#52] at 3; *Hamilton Compl.* [#23] ¶ 2. However, not one of the Motions contains an invocation of claim preclusion or issue preclusion. Thus, these doctrines will not be considered, although the timing of when the issues were previously litigated bears on the question of when the underlying claims accrued.

applies Colorado law, including Colorado law relating to statutes of limitations.   *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945) (holding that statutes of limitations are considered substantive matters for purposes of the *Erie* doctrine) (citation omitted). Pursuant to Colorado law, the general statute of limitations is three years for all actions arising out of contract, fraud, and conversion.   Colo. Rev. Stat. §§ 13-80-101(1)(a), (c), (h) (2015).   The statute of limitations for tort actions is two years.   *Id.* § 13-80-102(1)(a).   Each cause of action here is considered to accrue when the injury and its cause are known or should have been known by the exercise of due diligence.   *Id.* § 13-80-108(1), (3), (6). "Whether a [Colorado] statute of limitations bars a particular claim is a question of fact," but the issue may be decided as a matter of law "if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date."   *Burns v. Mac*, No. 13-cv-2109-WJM-KLM, 2014 WL 1242032, at *11 (D. Colo. Mar. 26, 2014) (citing *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App. 2005)).

Defendant T. Hamilton asserts four claims – his second, third, eleventh, and twelfth – against the Cross-claim Defendants regarding the sale of his property, which occurred on April 10, 2000.   *Hamilton Compl.* [#23] ¶ 16.   These claims are all barred by the statute of limitations as a matter of law.   Defendant T. Hamilton, in the process of litigating other suits, has previously asserted that the Barker Defendants breached the sale contract in *B&B 2nd Mortgage v. Hamilton*, 2001CV473 (Weld Cnty. Dist. Ct.).   *See Hamilton Compl., Ex. 1* [#23-1] at 81; *Second Barker Motion, Ex. 1* [#37-1] at 3-4 (describing Defendant T. Hamilton's claims in 2001CV473 as assertions that "B&B 2nd Mortgage had breached its agreements with him").   Thus, it is undisputed that these actions accrued no later than the end of 2001, and were thus barred by the end of 2004 because the limitations period for

contract actions is three years.  *See* Colo. Rev. Stat. § 13-80-101(a).  No foreseeable argument for equitable tolling could bring this action within the statute of limitations.  *See Devaughn v. Hendenskog*, No. 14-cv-00139-LTB-KLM, 2014 WL 7005827, at *6 (D. Colo. Dec. 11, 2014) ("[W]hen the dates provided in a complaint clearly demonstrate that the right to sue has been extinguished, 'the plaintiff has the burden of establishing a factual basis for tolling the statute.'") (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).  Because the claims for breach of contract, breach of the covenant of good faith, civil theft, and unjust enrichment rely on the same nexus of events which occurred thirteen years before the filing of his present claims and were clearly known by 2001, the Court finds that these claims are barred by the statute of limitations.

Defendant T. Hamilton's eighth claim is also barred by the statute of limitations.  The fraud claim is based on "evidence obtained from the Bank under subpoena served upon the Bank by Hamilton in April 2008," and relates to a "June 2007 loan modification."  *Hamilton Compl.* [#23] ¶¶ 65, 69.  Specifically, Defendant T. Hamilton references a series of statements contained in an affidavit written by Defendant Maynes on March 10, 2009.  *Id.* ¶ 67.  This affidavit was filed in response to a motion filed by Defendant T. Hamilton in state case 2001CV473.  *See Ex. 1* [#23-1] at 89.  The document is also referenced in the transcript of a deposition in which Defendant T. Hamilton was present on March 11, 2009.  *Id.* at 94.  Thus, the claim accrued no later than that date.  The statute of limitations for fraud is three years, and therefore the limitations period expired on March 11, 2012.  *See* Colo. Rev. Stat.  § 13-80-101(1)(c).  Therefore, Claim Eight is also barred by the statute of limitations.

Similarly, Defendant T. Hamilton's ninth claim, which asserts that Defendant B&B

2nd Mortgage, LLC fraudulently conveyed a quitclaim deed to Defendant B&B Ventures, LLC, also brings a claim that was previously litigated, but this time in *Hamilton v. B&B Ventures, LLC*, 2009CV625 (Colo. App.).  *See Second Barker Motion, Ex. 1* [#37-1] at 4 (describing how Defendant T. Hamilton, in 2009CV625 "asserted that the transfer of the mineral estate by B&B 2nd Mortgage to B&B Ventures, LLC, was void").  Thus, Defendant T. Hamilton learned of this allegedly fraudulent transfer in 2009 at the latest.  Accordingly, this claim is also barred by the statute of limitations.

The Court cannot determine from the Hamilton Complaint when Defendant T. Hamilton's remaining fraud claims – Five, Seven, and Ten – accrued, and thus the Court cannot determine as a matter of law that they are barred by the statute of limitations.

Defendant T. Hamilton's outrageous conduct claim purports to arise out of "the breach of [the SRA]," which allegedly occurred sometime in 2013 or 2014, and is thus not barred by the statute of limitations.

Accordingly, the Court **recommends** that Defendant T. Hamilton's Claims Two, Three, Eight, Nine, Eleven, and Twelve be **dismissed with prejudice**.  *See Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice of claims as barred by the statute of limitations).

### 3.    Remaining Fraud Claims (Five, Seven, and Ten)

The Cross-claim Defendants additionally argue that Defendant T. Hamilton has not pled his fraud claims with the particularity required by Fed. R. Civ. P. 9(b).

Pursuant to Colorado law, a plaintiff seeking to state a fraud claim must plead five elements: (1) that the defendant made a false representation of a material fact; (2) that the

one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff. *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013) (citing *Vinton v. Virzi*, 269 P.3d 1242 ¶ 15 (Colo. 2012)).

Additionally, fraud claims are subject to Fed. R. Civ. P. 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  In order to state a claim with sufficient particularity, "a complaint alleging fraud [must] . . . 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds* (*In re Edmonds*), 924 F.2d 176, 180 (10th Cir. 1991)). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud."  *United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 232 F.3d 902, at *3 (10th Cir. 2000) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1998)).  A plaintiff is under a Rule 9(b) obligation when dealing with more than one defendant to specify which defendant told which lie and under what circumstances.  *Golder Assocs., Inc. v. Edge Envtl., Inc.*, No. 06-cv-01260-WYD-BNB, 2007 WL 987458, at *3 (D. Colo. Mar. 30, 2007) (quotation marks omitted; citations omitted).  "The purpose of Rule 9(b) is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based."  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quotation marks omitted; brackets omitted; citations omitted).

Defendant T. Hamilton's fifth claim fails to allege a single false statement with any specificity, much less the date, the speaker, or the context.  The claim contains solely conclusory assertions, such as claiming that the Cross-claim Defendants, collectively, "willfully and wantonly put[ ] the artifice spin on the true facts."  *Hamilton Compl.* [#23] ¶ 53. Such conclusions are inadequate to give the Cross-claim Defendants notice of the "factual ground upon which [the claims against them] are based."  *See Schwartz*, 124 F.3d at 1252 ("[A] complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof.'") (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991).  Accordingly, the fifth claim fails to meet Rule 9(b)'s standard of specificity.

Defendant T. Hamilton's seventh claim alleges that the Barker Defendants and Third-Party Defendant Metcalf made fraudulent statements to a title insurance broker, then later declared those same documents void.  *Id.* ¶ 61.  Again, this claim lacks dates, context, or explanation of the contents of the alleged fraudulent statements sufficient to give notice of the basis of the claims to the Barker Defendants and Third-Party Defendant Metcalf. *See Golder*, 2007 WL 987458, at *3.

Defendant T. Hamilton's tenth claim asserts that Third-Party Defendant Metcalf "gain[ed] unfair advantage over [T.] Hamilton by, among other things, convoluting and misrepresenting matters to such an extreme in hopes of causing [T.] Hamilton to do what he would not have done had it not been for such dominion."  *Hamilton Compl. [#23]* ¶ 75. As discussed above, the claim is titled "undue influence," although the claim appears to be another fraud claim.  The claim identifies a particular defendant, but it does not contain any indication of the contents or the time and place of any allegedly false statement.  As such,

it fails to meet Rule 9(b)'s standard of particularity.   To the extent that Defendant T. Hamilton may be trying to assert a claim for undue influence, he would need to specify a contract or transaction from which he is seeking to be relieved.  *See* Restatement (Second) of Contracts § 177(2) ("If a party's manifestation of assent is induced by undue influence by the other party, the contract is voidable by the victim"); *In re Marriage of Farr*, 228 P.3d 267, 269 (Colo. App. 2010) (noting that undue influence provides equitable grounds for "avoid[ing] a transaction").

Accordingly, the Court **recommends** that Defendant T. Hamilton's fifth, seventh, and tenth claims be **dismissed without prejudice** for failing to meet Rule 9(b)'s standards of specificity.  *See Reynoldson*, 907 F.2d at 127 (stating that prejudice should not attach to a dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### 4.   Outrageous Conduct

To state a claim for outrageous conduct under Colorado law, a plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct, (2) the defendant did so recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) the conduct did indeed cause the plaintiff severe emotional distress.  *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1068-69 (D. Colo. 2009) (citing *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006)).   For a defendant's conduct to be outrageous, it must be "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *McCrary v. Aurora Pub. Schs.*, 57 F. App'x 362, 374 (10th Cir. 2003) (quoting *Coors*

*Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999)).  Moreover, "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he [or she] has actual or apparent authority over the other, or the power to affect the other's interests."  *Pearson v. Kancilia*, 70 P.3d 594, 598 (Colo. App. 2003) (citation omitted).  Whether the alleged conduct is sufficiently outrageous is, at least initially, a question of law for the court.  *Green*, 155 P.3d at 385.  Outrageous conduct claims are also known as claims for intentional infliction of emotional distress.  *Llewellyn*, 622 F. Supp. 2d at 1068.

Defendant T. Hamilton's fourth claim reads as a diatribe against the Cross-claim Defendants for the entirety of his exposure to them over the last fourteen years.  The claim does not rely on any specific incident, but rather alleges "a pattern of wrongful acts" including the filing of "frivolous lawsuits," "gaining an unfair advantage over Hamilton," and the allegedly wrongful use of "escrow instructions."  *Hamilton Compl.* [#23] ¶¶ 40, 49.  Defendant T. Hamilton alleges that the Cross-claim Defendants knew his emotional and financial susceptibility resulting from "catastrophic financial damages at the hands of three predatory lenders between 1999 and 2002."  *Id.* ¶ 41.

While it is true that "conduct . . . may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other or the power to affect the other's interests," no conduct here rises to the high standard required for a claim of outrageous conduct.  "[T]he tort of outrageous conduct is extremely limited."  *Harrison v. Luse*, 760 F. Supp. 1394, 1402 (D. Colo. 1991) (summarizing numerous cases where outrageous conduct claims failed as a matter of law).  The ongoing litigation described in the Hamilton Complaint falls far below the bar of an outrageous

conduct claim.  *See Harrison*, 760 F. Supp. at 1403 (holding that the filing of "alleged frivolous and groundless [lawsuits]" did not "reach the threshold level of conduct necessary to support a claim for outrageous conduct"); *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1548-49 (dismissing a claim of outrageous conduct where attorneys who allegedly had knowledge of a plaintiff's delicate mental health filed an involuntary bankruptcy petition against the plaintiff).  Similarly, misrepresentations in the context of a business transaction do not meet the standard of outrageous conduct.  *See First Nat'l Bank in Lamar v. Collins*, 616 P.2d 154, 156 (affirming dismissal of an outrageous conduct claim where misrepresentations in the purchase of an automotive supply store allegedly led to financial losses).

Situations where outrageous conduct claims have survived allege much more serious conduct than what is present here.  *See, e.g.*, *Destefano v. Grabrian*, 763 P.2d 275, 286 (Colo. 1988) (finding a valid jury question for outrageous conduct where Catholic priest, acting as marriage counselor, engaged in sexual relations with a married woman who sought marriage counseling from him); *Bohrer v. DeHart*, 943 P.2d 1220, 1223-24 (finding valid jury question for outrageous conduct where youth minister, acting as a counselor, coerced a minor into a four-year sexual relationship); *Danyew v. Phelps*, 676 P.2d 707, 708 (finding valid jury question for outrageous conduct where a landlord wrongfully evicted a tenant who was recovering from surgery at the hospital).

The Court finds that no allegations in the Hamilton Complaint cite conduct that is "atrocious and utterly intolerable in a civilized society," despite the numerous conclusory labels.  Therefore, the Court **recommends** that Defendant T. Hamilton's fourth claim be **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 127 (stating that prejudice

should not attach to a dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### IV. Conclusion

Based on the foregoing, the Court respectfully **RECOMMENDS** that the Motions [#7, #37, #38, #52] be **GRANTED**, and claims dismissed as follows:

(1) The Court **recommends** that Plaintiff's Claims One, Two, and Three and Defendant T. Hamilton's Claims Four, Five, Six, Seven, and Ten be **dismissed without prejudice**.

(2) The Court **recommends** that Defendant T. Hamilton's Claims Two, Three, Eight, Nine, Eleven, and Twelve be **dismissed with prejudice**.

(3) If this Recommendation is adopted in full, only the following claims will remain: (a) Plaintiff's second claim with respect to the four Hamilton Defendants, and (b) Plaintiff's fourth claim with respect to the four Hamilton Defendants. Accordingly, the Court **recommends** that the following parties be **dismissed** from this lawsuit: Maynes; Barker; B&B 2nd Mortgage, LLC; B&B Ventures, LLC; High Pointe, LLC; Ray; and Metcalf.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 11, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge